**FILED**

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

JUN 2 9 2004

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

| | |
|---|---|
| **RICKY WAGGY, an individual;** ) | **CASE NO.:** $l:04cv141$ |
| ) | |
| **Plaintiff,** ) | **COMPLAINT FOR VIOLATION OF:** |
| ) | |
| **vs.** ) | **1. ERISA SECTION 502(a)(1)(B);** |
| ) | **2. ERISA SECTION 502(a)(3)(B);** |
| **ALLEGHENY ENERGY, INC., a** ) | |
| **Pennsylvania Corporation; CIGNA** ) | **[29 USCS 1132(a)(1)(B)]** |
| **CORPORATION, a Pennsylvania** ) | **[29 USCS 1132(a)(3)(B)]** |
| **Corporation; LIFE INSURANCE** ) | **[29 UCS 1132(g)]** |
| **COMPANY OF NORTH AMERICA, a** ) | |
| **Pennsylvania Corporation; CONNECTICUT** ) | |
| **GENERAL LIFE INSURANCE** ) | |
| **COMPANY, a Connecticut Corporation;** ) | |
| **and DOES 1 through 10, inclusive.** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

Plaintiff, Ricky Waggy, alleges:

## PRELIMINARY ALLEGATIONS

### The Parties

1.      The Plaintiff is an individual residing in Harrison County, West Virginia.  He was an employee of Allegheny Energy, Inc., and by virtue of said employment he qualified for disability benefits.

2.      Plaintiff is informed, believes and thereupon alleges that Defendant, Allegheny Energy, Inc., is a corporation organized and existing under the laws of Pennsylvania and doing business in Marion County, West Virginia.

3.      Plaintiff is informed, believes and thereupon alleges that Defendants, Cigna Corporation, is a Pennsylvania corporation; Life Insurance Company of North America, is a

Pennsylvania Corporation; and Connecticut General Life Insurance Company, is a Connecticut Corporation, all doing business in Marion County, West Virginia.

4.      Plaintiff is further informed and believes that Defendants, Cigna Corporation, Life Insurance Company of North America, and Connecticut General Life Insurance Company, are the sponsors of the Allegheny Energy Long Term Disability Plan.

5.      Plaintiff is further informed and believes that Defendants, Cigna Corporation, Life Insurance Company of North America, and Connecticut General Life Insurance Company are the providers of and for the Allegheny Energy Long-Term Disability Plan.

6.      Plaintiff is informed, believes and thereupon alleges that Defendants and Does 1 through 10, inclusive, are responsible for the events and occurrences referred to herein, as well as the damages alleged.

7.      Plaintiff is informed, believes and thereupon alleges, that each of the Defendants were the agents, principles, representatives, employers, parents, subsidiaries, joint venturers, alter egos and/or co-conspirators of each of the other Defendants.

**Jurisdiction and Venue**

8.      Jurisdiction is conferred on this court by 26 U.S.C. § 401 et seq. and 29 U.S.C. § 1132 (e) (1)(Federal Question).  All of the acts complained of herein occurred within the jurisdiction of the United States District Court for the Northern District of West Virginia (Clarksburg Division).

**Plan Provisions and Actions**

9.      Allegheny Energy, Inc., adopted an employee benefit plan titled the Allegheny Energy Long-Term Disability Plan.  The Plan was at all material times, a duly organized, existing and qualified plan as defined by 26 U.S.C. § 411 et seq.  A copy of the Plan Summary, alleged by

the Defendants to be true and correct, is attached hereto as Exhibit "A" and is incorporated herein by reference.

10.    The Plaintiff was a duly qualified participant in the Plan at all material times hereto.

11.    All of the benefits due Plaintiff in accordance with the Plan were (and are) vested and non-forfeitable.  Plaintiff has duly complied with all of the conditions necessary to receive such benefits.

12.    The Plan provided for the payment of disability benefits in the event a plan participant became totally disabled.

13.    According to the terms of the Allegheny Energy Long-Term Disability Plan, a Qualifying Disability is determined by the Claims Administrator and is based on a employee who: (1) Is unable to perform the Regular Duties of his/her occupation for the first two years after the onset of the disability, and (2) Is unable to perform the Material and Substantial Duties of any occupation, for which he/she is qualified by reason of training, education, or experience, after two years from the onset of the disability.

14.    On or about January 8, 2001, the Plaintiff became totally disabled by virtue of his inability to work at his own occupation as required by the Plan.

15.    On or about June 28, 2001, the Plaintiff was declared disabled by the Plan and Long-Term Disability benefits were commenced on August 1, 2001.

16.    The Defendants paid the Long-Term Disability Benefit Payments from July 8, 2001 until July 5, 2003, as the Plaintiff was unable to engage in his occupation or any other reasonable occupation as required by the policy.

17.    On or about June 26, 2003, the Defendants terminated the Plaintiff's Long- Term

Disability Benefits. A true and correct copy of the June 26, 2003 letter terminating Long Term disability benefits is attached as Exhibit "B" and incorporated herein by reference.

18.     The conclusions of the review were, and are, contrary to the true condition of the Plaintiff and his treating physicians who have opined that he is Totally Disabled.

19.     On or about November 11, 2003, the Plaintiff exhausted all available administrative remedies by appealing the decision of the Defendants.

20.     On or about February 25, 2004, the Plaintiff was notified by David P. Lutz, Chairman of Employee Benefits Committee for Allegheny Power, that the appeal, or claim for reconsideration, was denied. A true and correct copy of the notice is attached hereto as Exhibit "C" and incorporated herein by reference.

21.     Notwithstanding the Defendants' review, Plaintiff is Totally Disabled as defined by the Plan and due benefits which the Defendants refuse to pay. Plaintiff brings this action seeking relief for Defendants' violations of various sections or the Employee Retirement Income Security Act of 1974.

22.     The Court has the authority to review the decision of the Plan de novo.

## FIRST CAUSE OF ACTION

**(Violation of Section 502 (a)(1)(B) Against**

**Allegheny Energy, Inc., Cigna Corporation, Life Insurance Company**

**of North America, Connecticut General Life Insurance Company,**

**and Does 1 through 5, inclusive.)**

23.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 22, inclusive.

24.     The Plaintiff is due rights and benefits under the terms of the Plan.

25.    The Defendants denied the Plaintiff the rights and benefits due under the Plan.

26.    The decision denying the Plaintiff the rights and benefits due the Plaintiff under the Plan was arbitrary, illegal, capricious, unreasonable, discriminatory and not made in good faith, violating 26 U.S.C. § 401, 411, and 501 (a), et seq.  The decision is not supported by substantial evidence and arises from an erroneous application of federal law.

27.    As a direct and proximate result of the Defendants' actions, the Plaintiff has sustained damages in an amount to be proven at trial.  Such damages will approximate the amount of benefits payable to the Plaintiff under the terms of the Plan.

28.    As a further direct and proximate result of the Defendants' actions, the Plaintiff has incurred, and will incur in the future, attorney fees and costs in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**(Violation of Section 502 (a)(3)(B) Against**

**Allegheny Energy, Inc., Cigna Corporation, Life Insurance Company**

**of North America, Connecticut General Life Insurance Company,**

**and Does 6 through 10 inclusive.)**

29.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 28, inclusive.

30.    The Plaintiff is due rights and benefits under the terms of the Plan.

31.    The Defendants have denied the Plaintiff the rights and benefits due under the Plan.

32.    The decision denying Plaintiff the rights and benefits due the Plaintiff under the Plan was arbitrary, illegal, capricious, unreasonable, discriminatory and not made in good faith, violating 26 U.S.C. § 401, 411, and 501 (a), et seq.  The decision is not supported by substantial

evidence and arises from an erroneous application of federal law.

33.     Equitable relief is appropriate and necessary to: (a) redress the denial of the rights and benefits due under the Plan; and (b) enforce the provisions of 29 U.S.C. § 1132 et seq. and the terms of the Plan.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1.     Ordering the Defendants to pay to Plaintiff all benefits due under the Plan;

2.     Declaring that all rights and benefits due Plaintiff are vested and non-forfeitable or, in the alternative, to award Plaintiff a money judgment for all sums owed to Plaintiff;

3.     Awarding Plaintiff prejudgment interest to the date of judgment;

4.     Awarding Plaintiff attorney's fees, court costs and all other reasonable costs incurred; and

5.     Granting Plaintiff such other and further legal and equitable relief as the Court may deem just and proper.


**DATED: May 24, 2004**

                              **UNDERWOOD LAW OFFICE**

                    **By:**_____
                              **Mark F. Underwood (WVSB #7023)**
                              **Counsel for Plaintiff**
                              **RICKY WAGGY**
                              **910 Fourth Avenue, Suite 1111**
                              **Huntington, WV 25701**
                              **Telephone: (304) 522-0508**
                              **Facsimile: (304) 399-5449**



## ALLEGHENY ENERGY
## LONG-TERM DISABILITY PLAN

### Summary Plan Description


Allegheny Energy, Inc.

# TABLE OF CONTENTS

**SECTION 1 – INTRODUCTION**.................................................................2
**SECTION 2 – GLOSSARY OF TERMS**.......................................................3
**SECTION 3 – PLAN HIGHLIGHTS** ............................................................5
**SECTION 4 – PLAN PROVISIONS** ............................................................6
   Eligibility.............................................................................................6
   Enrollment..........................................................................................6
   Contributions.....................................................................................6
   Commencement of Benefits...............................................................6
   How to File a Claim............................................................................6
   Schedule of Benefits..........................................................................7
   Limitations on Benefit Payments........................................................8
   Successive Disabilities.......................................................................8
   Duration of Benefit............................................................................9
   Rehabilitative Work............................................................................9
   Termination of Coverage....................................................................9
   Benefits Following Cancellation..........................................................9
   Questions...........................................................................................9
**SECTION 5 – IMPORTANT INFORMATION ABOUT THE PLAN**...............10
   Plan Name.........................................................................................10
   Type of Plan.......................................................................................10
   Plan Sponsor......................................................................................10
   Plan Administrator..............................................................................10
   Claims Administrator..........................................................................10
   Funding..............................................................................................10
   Legal Process.....................................................................................10
   Plan Number 504...............................................................................11
   Plan Records and Plan Year................................................................11
   Expenses............................................................................................11
   Amendment or Termination of Plan.....................................................11
   Your Legal Rights...............................................................................11
   Plan Document ..................................................................................12

Allegheny Energy, Inc.

# SECTION 1 – INTRODUCTION

The Allegheny Energy Long-term Disability Plan was designed to provide income replacement to Employees who are unable to work due to an injury or illness.  The Plan is comprised of two options, (a) the Basic Option, and (b) the Plus Option.  A summary of the benefits provided by this Plan can be found within this document.

This summary plan description (SPD) is intended only as a summary of the Plan's highlights and is not the official Plan document.  Additional details may be found in the official Plan document or any applicable insurance contracts.

This SPD is intended to be written in a clear, understandable, and informal context and every effort has been made to ensure this SPD accurately reflects the information contained in the official documents of the Plan.  If there is any inconsistency between this SPD and the official document or contracts, the Plan document or contracts will govern.

Allegheny Energy, Inc.

# SECTION 2 – GLOSSARY OF TERMS

The following terms are used throughout this SPD and when used in the text are capitalized.

**Company** – As used herein, Allegheny Energy Service Corporation, Monongahela Power Company, The Potomac Edison Company, West Penn Power Company, and their subsidiaries; Allegheny Ventures, Inc. and its subsidiaries; Allegheny Energy Unit 1 and Unit 2, L. L. C.; and such direct and indirect subsidiaries of Allegheny Energy, Inc. as the Board of Directors of Allegheny Energy, Inc. may designate from time to time, their successors and assigns, shall be referred to collectively as Allegheny Energy, Inc.

**Compensation** - All *base* wages and salaries payable by the Company during any Plan Year determined prior to all pre-tax contributions made to any Company-sponsored plan. Compensation for purposes of this Plan *excludes*:

- overtime pay
- shift differential
- premium pay
- commissions
- bonuses
- non-cash awards
- lump sums made under the Company's base salary administration program
- payments under a nonexecutive variable or incentive compensation plan
- payments for relocation expenses
- payments for educational assistance
- the imputed value of life insurance
- such other similar items as the Employee Benefits Committee may determine

**Employee** – Any person employed by the Company. Employee shall not include (1) any leased employee, as defined in Section 414(n) of the Internal Revenue Code, (2) an employee who is covered by a collective bargaining agreement and is not eligible to participate in the Plan as a result of collective bargaining, and (3) an individual retained by the Company to perform services for the Company (for either a definite or indefinite duration) and is characterized thereby as in the capacity of a fee-for-service worker or independent contractor or in a similar capacity (rather than the capacity of an employee), regardless of such individuals status under common law and regardless of whether any such individual who is or has been determined by a third party, including, without limitation, a government agency or board or court or arbitrator, to be an employee of the Company for any purpose.

**Employee Benefits Committee** – The Plan Administrator with the primary responsibility of overseeing the administration of the Plan. The Employee Benefits Committee consists of not less than three or more than five members appointed by the Finance Committee of the Board of Directors of Allegheny Energy, Inc.

**Employee Retirement Income Security Act of 1974, as amended (ERISA)** – The Federal law which covers pension and welfare benefits and which was enacted to protect employees' rights with regards to these benefits.

**Material and Substantial Duties** – The majority of the important duties and responsibilities necessary to successfully perform a job or an occupation. The duties and responsibilities are

Allegheny Energy, Inc.

generally included, but not limited to, those outlined in a position profile or job description for a specific job for which the Participant is reasonably qualified based on training, education, and experience.

**Income Replacement Rate** – The pay used in determining benefits payable under the Plan, which is based on the Employee's Compensation.

**Participant** – An Employee who participates in the Long-term Disability Plan.

**Plan** – The Allegheny Energy Long-term Disability Plan.

**Plan Year** – The calendar year beginning January 1 and ending December 31.

**Qualifying Disability** - An Employee is eligible to receive benefits under the Plan if he/she has a Qualifying Disability. A Qualifying Disability is determined by the Claims Administrator and is based on an Employee who:

1. Is unable to perform the Regular Duties of his/her occupation for the first two years after the onset of the disability, and
2. Is unable to perform the Material and Substantial Duties of any occupation, for which he/she is qualified by reason of training, education, or experience, after two years from the onset of the disability.

Allegheny Energy, Inc.

# SECTION 3 – PLAN HIGHLIGHTS

The following are some of the key features and provisions of the Plan.

- ✓   Employees eligible to participate in the Plan after 6 months of employment.

- ✓   Eligible Employees can choose from two Plan options:

    1. The Basic Option, which provides 60% income replacement, and
    2. The Plus Option, which provides 70% income replacement.

- ✓   The Company pays the full cost for coverage under the Basic Option. Employees electing to participate under the Plus Option pay only a small part of the cost for coverage.

- ✓   Benefits generally begin for a Qualifying Disability after 180 days have elapsed.

Allegheny Energy, Inc.

# SECTION 4 – PLAN PROVISIONS

### Eligibility

Regular full-time Employees or probationary full-time Employees who (1) have been employed for six months, (2) are actively at work, and (3) are not members of a unit covered by a collective bargaining agreement or are members of such a unit with an agreement providing for their participation, are eligible to participate in the Long-term Disability Plan.

An Employee who becomes a Participant of the Plan and subsequently becomes a member of a unit covered by a collective bargaining agreement will no longer be permitted to be a Participant while included in such unit, unless the unit's collective bargaining agreement provides otherwise.

### Enrollment

An Employee is automatically enrolled in the Basic Option upon meeting the eligibility requirements, and remains under that option until he/she elects otherwise during the annual enrollment period.

### Contributions

*Basic Option* - Coverage under the Basic Option is provided to eligible Employees at no cost. The Company pays the full cost of coverage.

*Plus Option* – The Employee and Company share the cost of coverage under the Plus Option. The Employee contribution rate for the Plus Option is .15% of his/her Compensation. Payment of premiums for coverage under this Plan will be made on a pre-tax basis under the Pre-tax Premium Payment Plan.

An Employee's contributions shall be waived during the period for which he/she is entitled to and receives a monthly benefit payment under the Plan. An Employee eligible to participate in the Plan shall have his/her applicable contributions resume upon returning to active employment.

### Commencement of Benefits

Benefits generally commence under the Plan after an eligible Employee has been disabled for a continuous period of 180 days and has been approved for a Qualifying Disability by the Claims Administrator. If the disability temporarily ceases for more than 30 days during this period, the 180 days will be extended by the number of days the disability was temporarily ceased.

The Claims Administrator's determination of a Qualifying Disability for an eligible Employee is based on the information contained on the appropriate claim form. This information must be complete and accurate to ensure a timely decision by the Claims Administrator. In most cases the Claims Administrator will require information from the Employee's attending physician before it can render a final decision.

### How to File a Claim

As soon as it appears a claim may be in order, the Employee should contact Human Resources who will furnish the necessary forms.

Allegheny Energy, Inc.

## Schedule of Benefits
The following schedule compares the benefits payable under both Plan options:

| Provision | Plus Option | Basic Option |
|---|---|---|
| Income Replacement Percentage | 70% of Compensation | 60% of Compensation |
| Minimum Monthly Benefit | $250 (without restrictions) | $200 (with restrictions) |
| Maximum Monthly Payment | See Below | See Below |

Benefits under the Plan will be based on the Employee's applicable Income Replacement Percentage at the time as of the effective date of his/her Qualifying Disability, less:

1. Any periodic payments provided on account of the Employee's disability:
   a. Under any group insurance coverage;
   b. From disability income benefits for which the Employee is eligible under the Federal Social Security Act (except as noted below);
   c. From any local, state, or federal government disability, or retirement plan;
   d. Under the Jones Act or any workers' compensation, occupational disease, or compulsory disability benefits law;
   e. Under the mandatory portion of any no-fault automobile insurance policy;
   f. From sick pay benefits under the Company's plan;

2. Any Federal Old Age Benefits provided under the Federal Social Security Act (except as noted below under "Social Security Freeze"). If a Participant is covered under the Social Security Act for disability or old age benefits, the Participant will be assumed to be receiving such benefits. These assumed benefits will be estimated unless the Participant gives the claims administrator proof that the Participant has applied for these benefits and payments were denied.

   Monthly payments to a disabled employee will not be reduced by any increase in Social Security benefits made after monthly payments have started (except increases due to changes in the number of his/her Dependents for purposes of calculating the maximum amount payable).

Minimum Monthly Payments under the Plan will be determined as follows:

*Basic Option* - The minimum payment under the Basic option shall be $200 per month. However, the minimum payment shall be reduced if it would exceed the maximum amount for the Basic Option shown below, or if the sum of the minimum payment and benefits provided under the Allegheny Energy Sick Pay Plan would exceed 60% of the Employee's Compensation.

*Plus Option* - The minimum payment from the Plus option shall be $250 per month, which will not be reduced by income from other sources.

Maximum Monthly Payments under the Plan will be determined as follows:

*Basic Option* - The maximum amount payable under the Basic Option will be the lesser of (a) 80% of the Employee's Compensation at the time he/she becomes disabled less

Allegheny Energy, Inc.

all amounts he/she receives for the same month from the sources referred to in items (1) and (2) above and any benefits paid to the Employee's dependents under the Federal Social Security Act or (b) $7,500 per month.

*Plus Option* - The maximum amount payable under the Plus Option will not be more than $8,750 per month.

Any benefits paid in a lump sum in other than monthly periods for Items (1) and (2) above, except as shown below, will be deemed to be paid in monthly amounts prorated over the time for which the sum was paid. If no such time is stated, the lump sum will be prorated monthly over the employee's expected life span. Lump sum payments under:

1. A retirement plan will be deemed to be paid in the monthly amount that the Employee could have chosen to receive in installment payments under this Plan;
2. The Jones Act or any workers' compensation or similar law (which includes benefits paid under a compromise and release) will be deemed to be paid monthly:
   a. At the rate stated in the award; or
   b. At the rate paid prior to the lump sum (if no rate is stated in the award); or
   c. At the maximum rate set by the law (if no rate is stated and the employee did not receive a periodic award).

Monthly payments to a disabled Employee will not be reduced by any increase in Social Security benefits made after monthly payments have started (except increases due to changes in the number of his/her dependents for purposes of calculating the maximum amount payable).

For disability caused or contributed to by mental illness or functional nervous disorder, benefits will be paid up to a maximum of 24 months. In addition, if the Employee is confined in a hospital for mental illness or functional nervous disorder for at least 14 days, benefits will be paid as long as he/she is in the hospital and during the first three months after he/she leaves the hospital.

## Limitations on Benefit Payments

No benefits will be payable under this Plan for any disability resulting directly or indirectly from:

- War, insurrection or rebellion;
- Active participation in a riot;
- Intentionally self-inflicted injuries;
- The use of illegal drugs;
- Willful misconduct; or
- Any disability occurring during the first 12 months after an Employee becomes covered under any Company-sponsored long-term disability plan and resulting from a disease or injury for which the Employee received treatment within three months immediately prior to such date.
- Any disability continuing beyond 24 months which was caused or contributed to by mental illness or functional nervous disorder.

## Successive Disabilities

Successive disabilities resulting from the same or related causes will be considered a continuation of the first disability unless the disabilities are separated by a return to work for at least six consecutive months. Successive disabilities resulting from unrelated causes will be considered a continuation of the first disability unless separated by a return to work of at least one day.



Allegheny Energy Inc.

**Duration of Benefit**
Benefits will continue for as long as the Employee has a Qualifying Disability, as determined by the Claims Administrator. It is not necessary to be confined in a hospital, but the Employee must be under a doctor's care.

Benefits payable under the Plan will cease on the earliest of the following dates:

1. The date the Employee no longer has a Qualifying Disability;

2. The date the Employee begins to receive retirement benefits under the Allegheny Energy Retirement Plan;

3. The date the Employee attains age 65 if his/her disability began before his/her 60th birthday; or

4. The earlier of the following dates if the Employee's disability began on or after his/her 60th birthday:
   a. The date five years from the date the Employee's disability began;
   b. The Employee's 70th birthday, or if a total of 12 monthly benefits have not been paid before then, the date the 12th monthly benefit is paid; or
   c. The date 12 monthly benefits have been paid, if the Employee's disability began on or after his/her 70th birthday.

**Rehabilitative Work**
If at any time a disabled Employee engages in work for which he/she is paid during the period of disability, the work will be considered rehabilitative and his/her monthly payments will be reduced by 60% of the amount he/she receives for such work.

**Termination of Coverage**
Coverage under the Plan ceases upon termination of employment with the Company, including retirement.

**Benefits Following Cancellation**
If disability for which monthly income is payable occurs while this Plan is in force, monthly payments will be made after termination of this Plan to the same extent as if this Plan had not been terminated.

**Questions**
Employees should direct all questions and inquiries, such as (1) how to file a claim, (2) the status of a submitted claim, and (3) benefits payable under the Plan, directly to the Claims Administrator for the Plan as shown below:

CIGNA
1600 West Carson Street, Suite 300
Pittsburgh, PA  15219-3419
Phone:  1-800-238-2125

Allegheny Energy, Inc.

# SECTION 5 – IMPORTANT INFORMATION ABOUT THE PLAN

The following is important information regarding the Plan:

## Plan Name
The official Plan Name is the Allegheny Energy Long-term Disability Plan.

## Type of Plan
The Allegheny Energy Long-term Disability Plan is an employee health and welfare benefit plan, as defined under ERISA.

## Plan Sponsor
The name and address of the Plan Sponsor is:

>       Allegheny Energy, Inc.
>       10435 Downsville Pike
>       Hagerstown, Maryland  21740
>       Employer Identification Number 13-5531602

## Plan Administrator
The name and address of the Plan Administrator is:

>       Employee Benefits Committee
>       c/o Human Resources
>       Allegheny Energy, Inc.
>       800 Cabin Hill Drive
>       Greensburg, PA  15601
>       Phone:  (724) 837-3000

## Claims Administrator
The name and address of the third party who processes claims for the Plan is:

>       CIGNA Health Care
>       1600 West Carson Street, Suite 300
>       Pittsburgh, PA  15219-3419
>       Phone:  1-300-238-2125

## Funding
The Plan is self-insured by the Company and administered through an administrative services contract with CIGNA Health Care.  The costs for the Plan are shared by the Employee and the Company.  Employee and Company contributions are placed in a Voluntary Employee Benefit Association (VEBA) trust, as defined under Section 501(c)(9) of the Internal Revenue Code.

## Legal Process
The agent for service of legal process is:

>       Sr. Vice President & Chief Financial Officer
>       Allegheny Energy, Inc.
>       10435 Downsville Pike
>       Hagerstown, MD  21740

Allegheny Energy, Inc.

## Plan Number 504

### Plan Records and Plan Year
The Plan and all of the appropriate records are maintained on a calendar year basis, beginning on January 1 and ending on December 31 of each year.

### Expenses
Expenses incurred for the administration of the Long-term Disability Plan are paid from the VEBA trust.

### Amendment or Termination of Plan
The Company expects to continue all benefits plans, but reserves the right to amend or terminate any plan at any time.  Any action to change or terminate a plan may be by resolution of the Board of Directors of Allegheny Energy, Inc. or by any person or persons duly authorized by said Board of Directors.

The decision to change or terminate a plan may be for any reason including, but not limited to, changes in federal or state laws governing benefits plans (including the requirement of the Internal Revenue Code or the Employee Retirement Income Security Act of 1974 (ERISA)), or the provisions of a contract or policy involving a claims administrator or insurance company.

## Your Legal Rights

### How to Make a Claim
If a Participant or his/her beneficiary believes they are entitled to receive a benefit under the Plan which has not been received, a written claim may be filed with the Plan Administrator for this benefit specifying the basis for the claim and all pertinent facts in making the claim.  The Participant, their beneficiary, or an authorized representative must sign the claim.

### How to Appeal a Claim Denial
The following is an explanation of the steps a Participant may take in addition to those outlined in the "Your Rights as a Plan Participant" below::

If a claim is denied, the Participant will be notified in writing of the reason for denial.  The Participant may review any pertinent documents.  The Participant, or another person on his/her behalf, may request a review of a denied claim by writing, within 60 days of receipt of the denial notice, to the Employee Benefits Committee that notified the participant of the claim denial.  A written request for review should state the reasons why the claim should not have been denied and should include any additional documentation, which the Participant feels support the claim and any additional questions, or comments, which are appropriate.  Under normal circumstances the Participant will be notified of the final decision within 60 days of the date the request for review is received. If there are special circumstances requiring delay, the Participant will be notified of the final decision no later than 120 days after the request for review is received.

—


Allegheny Energy Inc.

**Your Rights as a Plan Participant**
Participants of the Allegheny Energy Long-term Disability Plan are entitled to certain rights and protections under the Employee Retirement Income and Security Act of 1974 (ERISA). ERISA provides that all plan Participants be entitled to:

- Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all Plan documents, including insurance contracts, collective bargaining agreements, and copies of all documents filed by the Plan with the U.S. Department of Labor, such as detailed annual reports.

- Obtain copies of all Plan documents and other Plan information upon written request to the Plan Administrator. The Plan Administrator may make a reasonable charge for the copies.

- Receive a summary of the plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of all Plan Participants and beneficiaries. No one, including the employer, the Participants' union, or any other person, may fire the Participants or otherwise discriminate against the Participants in any way to prevent them from obtaining a benefit or exercising their rights under ERISA. If any Participants claim for a benefit is denied in whole or in part, the Participant must receive a written explanation of the reason for the denial. The Participant has the right to have the Plan review and reconsider the claim.

Under ERISA, there are steps a Participant can take to enforce the above rights. For instance, if a participant requests materials from the plan and does not receive them within 30 days, the participant may file suit in a federal court. In such case, the court may require the Plan Administrator to provide the materials and pay the Participant up to $110 a day until the Participant receives the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If the Participant has a claim for benefits which is denied or ignored, in whole or in part, the Participant may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money or if a Participant is discriminated against for asserting his/her rights, the Participant may seek assistance from the U.S. Department of Labor, or may file in a federal court. The court will decide who should pay court costs and legal fees. If the Participant is successful the court may order the person sued to pay these costs and fees. If the Participant loses, the court may order the Participant to pay these costs and fees, for example, if it finds the Participants claim is frivolous.

If a Participant has any questions about the Plan, he/she should contact the Plan Administrator. If a Participant has any questions about this statement or about his/her rights under ERISA, he/she should contact the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor.

**Plan Document**
This summary plan description and the payment of benefits described herein are subject to the provisions of the underlying Plan document, and applicable insurance contract. If there is any

Allegheny Energy, Inc.

inconsistency between this summary plan description and the official Plan document, the Plan document will govern. The Participant should not take any action in reliance on availability or the amounts of benefits shown without verification of such benefits by Human Resources.

Copies of the Plan document and the latest annual report for the plan as required by ERISA are available for inspection during normal company business hours in Human Resources or at the office of the Plan Sponsor. The Participant may obtain a copy of the Plan document and a copy of the latest annual report by written request to:

> The Employee Benefits Committee
> c/o Human Resources
> Allegheny Energy, Inc.
> 800 Cabin Hill Drive
> Greensburg, PA 15601

Delivery will be made within thirty days following receipt of the request. The Participant will be charged no more than a reasonable charge as prescribed by ERISA (not to exceed twenty-five cents per page); and no other charges for furnishing documents, such as handling and postage charges will be made.

Gary Johnson
Case Manager
Disability Management Solutions

**CIGNA** Group Insurance
Life · Accident · Disability

June 26, 2003

Routing  P250
PO Box 22325
Pittsburgh, PA 15222-0325
Telephone  800-238-2125, x-3313
Facsimile  412-402-3529

RICKY WAGGY
RR1 BOX 476
LUMBERPORT WV 26386

| RE: | Claimant's Name: | **Ricky Waggy** |
|-----|------------------|-----------------|
|     | Plan Number:     | **NHD 960002** |
|     | Plan Holder:     | **Allegheny Energy** |
|     | Administered by: | **Life Insurance Company of North America** |

Dear Mr. Waggy:

We are writing in reference to your above captioned Long Term Disability claim.

Under the terms of the Plan, disability is defined as:

> **Qualifying Disability** – An Employee is eligible to receive benefits under the Plan if he/she has a Qualifying Disability.  A Qualifying Disability is determined by the Claims Administrator and is based on an Employee who:
>
> 1. Is unable to perform the Regular Duties of his/her occupation for the first two years after the onset of the disability, and
> 2. Is Unable to perform the Material and Substantial Duties of any occupation, for which he/she is qualified by reason of training, education, or experience, after two years from the onset of disability.

Your claim has reached the two year point.  Therefore, in order to determine your eligibility for Monthly Benefits, we assessed how your medical condition affected your ability to work in any occupation.  Using this information, we determined that you do not meet the definition of Qualifying Disability as noted above.

In making a decision on your claim, we requested new medical information from Dr. Anderson, who you listed as your only treating physician.

✓  Dr. Anderson supplied information showing you had a diagnosis of alcohol abuse, cirrhosis of the liver, osteoporosis high blood pressure, and arthralgia.

✓  A 2/13/03 office note stated you were off alcohol for 40 days, you had complaints of knee pain and problems with your knees. Your high blood pressure was noted to be

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

Ricky Waggy
June 26, 2003
Page 2

stable. It was noted that you were taking Zoloft for anxiety.

✓ An office note dated 5/14/03 stated you had right thumb pain, right shoulder pain, knee pain and swelling, you were off alcohol for 5 months and doing well. A 5/14/03 report noted your liver function was within normal limits. The 5/14/03 note stated your hypertension was stable. This note also stated you were off Zoloft.

✓ Dr. Anderson also provided a Physical Abilities Assessment form which showed you have the ability to:

- Lift up to 20 pounds up to 2.5 hours per day
- Carry up to 50 pounds up to 2.5 hours per day
- Push and pull up to 20 pounds up to 2.5 hours per day
- Sit and stand for up to 5.5 hours per day
- Walk, climb ladders or stairs up to 2.5 hours per day
- Balancing, stooping, kneeling, crouching, and crawling up to 2.5 hours per day.
- Reaching overhead and desk level up to 5.5 hours per day
- Reach below the waist up to 2.5 hours per day.
- No restriction on fine manipulation
- Simple grasp up to 5.5 hours per day
- Firm grasp up to 2.5 hours per day

✓ Based on the information provided by your physician and combined with your work history, education, and training, we performed a Transferable Skills Analysis (TSA). Using this data, the TSA identified several occupations for which you have transferability and could be expected to perform based on the information on file. Several occupations commensurate with 60% or more of your indexed pre-disability salary were identified, including

1. Belt Repairer
2. Office-Machine Servicer
3. Assembly Technician
4. Gas-Welding-equipment Mechanic

In summary, based upon the available medical information, we have concluded that your condition is not severe enough to satisfy the definition Qualifying Disability beyond the two year point as defined in the above paragraph.

Consequently, we must deny any liability under this policy beyond 7/5/03. Therefore, your Long Term Disability claim has been terminated with benefits paid through 7/5/03. At this time, no further benefits are payable, and your claim is closed.

Of course, if you disagree with our decision you may request a review. The following points will explain the procedure and what you may forward to our office for review. The expense of obtaining medical information will not be incurred by our office. We will no longer request information from you or your treating physicians.

Ricky Waggy
June 26, 2003
Page 3

This action is based upon information in your Long Term Disability file. If you are not satisfied, or do not agree with the reasons for this denial, you may appeal by providing the following information:

✓  A letter explaining why you feel you are unable to perform all the duties of any occupation which you are or may reasonably become qualified based on your education, training, or experience.

✓  This should include specific physical limitations, comparing the pre-disability and post-disability functioning; changes in daily activities/abilities; and so on; and

✓  A narrative report from an appropriately specialized physician regarding any physical limitations. This should include a copy of office records from 5/15/03 on.

✓  Any medical tests or procedures from 5/15/03 on that indicates any additional abnormalities; and/or

✓  A complete copy of office notes from your physician from 5/15/03 on, including, but not limited to treatment / progress notes, reports / interpretations of all diagnostic tests (i.e. MRI, x-rays, CAT Scans, Blood Tests, etc.), correspondence to and from consulting physicians and

✓  A copy of an Independent Medical Examination report from a qualified physician performed within the past year and/or

✓  A Functional Capacities Evaluation completed by your current Attending Physician, and

✓  Any other information you feel would be pertinent to our review.

You may request a review of this denial by writing to the undersigned Life Insurance Company of North America representative signing below within 180 days of receipt of this letter. Please forward a copy of the denial letter along with the enclosed reimbursement agreement signed by you. Please include medical documentation (e.g. medical records, physician□s statement, test results) that supports your claim. Our office will notify you of the final decision within 45 days of receipt of your request. Special circumstances may require up to 90 days.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. Should you have any information that would prove contrary to our findings, please submit it to us. We will be pleased to review any supportive information you may wish to submit.

You have the right to bring legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal.

Ricky Waggy
June 26, 2003
Page 4

Please review your summary plan description information available from your employer
for additional information.  If you have any questions, please do not hesitate to contact me
at (800) 238-2125, x-3313.

Sincerely,

Gary Johnson
Case Manager



Allegheny Energy

800 Cabin Hill Drive
Greensburg, PA 15601
724-837-3000

February 25, 2004

Ricky L. Waggy
Route 1, Box 476
Lumberport, WV 26386

Dear Mr. Waggy:

This letter is intended to notify you of the decision by the Allegheny Energy Employee Benefits Committee regarding your appeal to reinstate benefits under the Allegheny Energy Long-term Disability Plan.

The Allegheny Energy Employee Benefits Committee will uphold Cigna's decision to deny continuation of the monthly LTD benefits. Our final decision considers the medical opinion Allegheny Energy received from an independent physician who is board certified in occupational and industrial medicine. Specifically, that there was no data to support that your medical conditions would support lack of functional ability to perform full time sedentary occupational activities.

The Allegheny Energy Long-term Disability Plan defines a Qualifying Disability as follows:

Qualifying Disability – An Employee is eligible to receive benefits under the Plan if he/she has a Qualifying Disability. A Qualifying Disability is determined by the claims administrator and is based on an Employee who:

1.   Is unable to perform the Regular Duties of his/her occupation for the first two years after the onset of the disability, and
2.   Is unable to perform the Material and Substantial Duties of any occupation, for which he/she is qualified by reason of training, education, or experience, after two years from the onset of the disability.

Allegheny Energy, as fiduciary of the Long-term Disability Plan, must insure that the Plan is administered consistently and according to the guidelines established in the Plan Document for all participants.

As a participant of the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA); specifically, the claimant has a right to pursue legal action in accordance with §502(a) of ERISA.

If you have any questions about this determination, please contact Paula Fortunato at 724-838-6656.

Sincerely,

David P. Lutz
Chairman
Employee Benefits Committee

c:  P. L. Fortunato